UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER L. PUTNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:21 CV 45 ACL |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Jennifer Putney brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the Social Security Administration Commissioner's denial of her application

for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Putney's severe impairments,

she was not disabled as she had the residual functional capacity ("RFC") to perform past relevant

work.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and

remanded.

### I.   Procedural History

Putney filed her application for DIB on May 17, 2018.   (Tr. 167-68O.)   She claimed she

became unable to work on October 1, 2017, due to a back impairment.   (Tr. 207.)   Putney was

35 years of age at her alleged onset of disability date.   Her application was denied initially.   (Tr.

59-74.)   Putney's claim was denied by an ALJ on August 24, 2020.   (Tr. 10-21.)   On January

26, 2021, the Appeals Council denied Putney's claim for review.   (Tr. 1-4.)   Thus, the decision

of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981,

416.1481.

 In this action, Putney argues that the ALJ "violated SSR 16-3p by failing to appropriately

assess Putney's allegations of pain."   (Doc. 18 at 9.)

## II.   The ALJ's Determination

 The ALJ first found that Putney met the insured status requirements of the Social

Security Act through December 31, 2023.   (Tr. 12.)   She stated that Putney has not engaged in

substantial gainful activity since her alleged onset of disability date.   *Id.*   In addition, the ALJ

concluded that Putney had the following severe impairments: lumbar degenerative disc disease

with disc bulges status-post fusion, post laminectomy syndrome, chronic pain syndrome, type II

diabetes with neuropathy, obesity, adjustment disorder/depression/bipolar disorder, and anxiety.

*Id.*   The ALJ found that Putney did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments.   (Tr. 13.)

 As to Putney's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform a range of
> light work, in that she can lift and carry up to twenty pounds
> occasionally and lift or carry up to ten pounds frequently; stand
> and/or walk for six hours out of an eight-hour workday; and sit for
> six hours out of an eight-hour workday.   The claimant can
> occasionally climb ladders, ropes and scaffolds, climb ramps and
> stairs, balance, stoop, kneel, crouch and crawl.   The claimant can

> occasionally use foot controls bilaterally.   The claimant can
> occasionally work at unprotected heights, with moving mechanical
> parts, and in vibration.   The claimant is able to carry out detailed
> but uninvolved instructions in the performance of simple, routine
> and repetitive tasks in a low stress work environment with no fast-
> paced production requirements involving simple work-related
> decisions, and with only occasional judgment and work place
> changes.

(Tr. 15.)

The ALJ found that Putney was able to perform her past relevant work as a cashier, as it is generally performed.   (Tr. 19.)   The ALJ therefore concluded that Putney was not under a disability, as defined in the Social Security Act, from October 1, 2017, through the date of the decision.   (Tr. 21.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits protectively filed on May 17, 2018, the claimant
> is not disabled under sections 216(i) and 223(d) of the Social
> Security Act.

*Id.*

### III.   Discussion

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in

several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).

As noted above, the ALJ found that, despite Putney's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform past relevant work. When determining a claimant's RFC, "an ALJ takes into account the claimant's symptoms, such as pain, and evaluates the intensity, persistence, and limiting effects of those symptoms." *Barbara M. v. Saul*, No. 18-CV-1749 (TNL), 2019 WL 4740093, at *7 (D. Minn. Sept. 27, 2019)

(citations omitted).   Putney argues that the ALJ violated SSR 16-3p by failing to appropriately assess her allegations of pain and limitations.   Specifically, Putney claims that the ALJ found her allegations of pain were unsupported by the record by "relying only on snippets of medical findings to support his narrative."   (Doc. 18 at 11.)

Social Security Ruling 16-3p[1] eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence.   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529.   The Rule incorporates the familiar factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) that previously guided an ALJ's analysis of subjective complaints, including: objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency and intensity of the symptoms (*i.e.*, pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions.   *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019).   If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints.   *Id.*

As described by the Eighth Circuit, "[o]ur role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).   "We consider evidence that detracts from the Commissioner's decision as well as evidence that supports it."   *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) citing *Singh*, 222 F.3d at 451.   "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the

---

[1]  The revised Ruling became effective on March 27, 2017.   It applies to determinations or decisions made by the Social Security Administration on or after March 28, 2016.

Commissioner's decision."   *Id.   See also Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

The Commissioner's decision will not be reversed "merely because substantial evidence exists in

the record that would have supported a contrary outcome."   *Young v. Apfel*, 221 F.3d 1065, 1068

(8th Cir. 2000).

The ALJ summarized Putney's testimony regarding her limitations as follows, in relevant

part:

> The claimant alleges disability due to constant, radiating pain from her lower back
> through her toes and diabetes [].   Her pain allegedly affects her ability to lift,
> squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and
> concentrate [].   She alleges that her pain has been worsening and that she does
> not leave her house unless absolutely necessary, her mother comes over to pick up
> the house, and she depends on her son and ex-husband for most chores and meals
> [].   At the hearing, the claimant testified she had a lumbar fusion after failing
> conservative treatments, including injections.   She testified hat she had some pain
> relief for about a month before her pain and swelling got even worse, and that she
> never regained her range of motion.   In terms of specific functional limitations,
> she testified that she could lift maybe 8 to 10 pounds, stand for 20 to 30 minutes,
> walk 35 to 40 feet, and sit for 20 minutes at a time.   She testified that she has
> trouble bending and uses a reacher to pick things up.   She said that most days she
> spends a lot of her time lying down, four times a day even on a good day.

(Tr. 15-16.)

The ALJ determined that, although Putney's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, her statements regarding the intensity,

persistence, and limiting effects of these symptoms were not entirely consistent with the medical

evidence and other evidence in the record.   (Tr. 17.)   He explained that, while Putney "has gone

to considerable lengths to treat her backpain, she has not presented with any chronic motor,

sensory, strength, or reflex deficits reasonably consistent with the extreme limitations she

alleged."   *Id.*   Putney argues that the ALJ violated the Commissioner's regulations by relying

on an isolated interpretation of the record to discredit Putney's allegations regarding her pain and

limitations from her back impairment.   The undersigned agrees.

A brief summary of the relevant medical evidence regarding Putney's back impairment is provided below:[2]

On October 13, 2017—less than two weeks prior to her alleged onset of disability date—Putney presented to Jacob L. Muckerman, FNP, at Regional Brain & Spine for a neurosurgical evaluation.   (Tr. 381-85.)   She complained of back and posterior left leg pain.   (Tr. 381.)   Mr. Muckerman provided the following history of Putney's treatment for back pain:

> Mrs. Putney describes a 15+ year history of back pain complaints.   She reports an overall progression of symptoms since 2014 to include left leg pain.   She was evaluated in the emergency department at Southeast Hospital early September 2017 with complaints of back and leg pain.   She has attempted conservative treatments in the past including oral steroids, oral pain medications, muscle relaxers, Neurontin, and previous epidural steroid injections.   She has attempted chiropractic adjustments without relief.   She is currently taking Flexeril and Norco on an as-needed basis.   She is relying on daily gabapentin.   CT scan of the abdomen and pelvis performed in 2013 did reveal some degree of disc bulging/loss of disc height at L4-5.   More recent x-ray study of the lumbar spine describes continued progression of loss of disc height at L4-5.

(Tr. 384-85.)   Upon examination, Mr. Muckerman noted diffuse lumbar spine and bilateral SI joint tenderness to palpation; and a positive sitting straight leg raise test on the left.   (Tr. 384.) Mr. Muckerman recommended an MRI study of the lumbar spine to evaluate for stenosis at the L4-5 level.   (Tr. 385.)

Putney presented to the emergency room at Poplar Bluff Regional Medical Center on May 13, 2018, with complaints of low back pain that radiates to both legs, with numbness and tingling.   (Tr. 334.)   Her gait was limited by pain.   (Tr. 335.)   She underwent a CT of the

---

[2]Although the ALJ found Putney has multiple severe physical and mental impairments, Putney's argument focuses on the ALJ's assessment of her pain and limitations resulting from her back impairment.   The Court will, therefore, limit its summary of the medical evidence to Putney's back impairment.

lumbar spine, which revealed disc space narrowing at L4-L5, and small disc bulges at L3-4, L4-5, and L5-S1.   (Tr. 336.)   She received a Toradol injection and was prescribed Norco.[3]   *Id.*

On June 11, 2018, Putney underwent a lumbar MRI, which showed a broad-based posterior herniation of the L5-S1 disc, causing mild narrowing of the central canal; a broad-based posterior and right paracentral herniation of the L4-L5 disc, causing narrowing of the central canal; mild diffuse bulges of L1-2 and L2-3; mild arthropathy at L4-5 and L5-S1; and altered narrow signal intensity of the adjoining endplates of L4 and L5.   (Tr. 362-63.)

On September 12, 2018, Putney presented to Brandon J. Scott, D.O., for a neurosurgery consult.   (Tr. 603.)   She complained of back and left leg pain, which is made worse by activity and is reduced with rest.   *Id.*   On neurological exam, Dr. Scott found she had normal strength, but a sensory deficit was present, and she exhibited abnormal muscle tone.   (Tr. 604.)   Dr. Scott reviewed Putney's MRI of the lumbar spine and indicated it shows "advanced degeneration at L4-5 and L5-S1 levels causing severe neural foraminal stenosis bilaterally."   *Id.*   He diagnosed Putney with lumbar disc degeneration and lumbar radiculopathy.   *Id.*   Dr. Scott indicated that Putney would try pain management once again, and if her pain did not improve, then she would be a candidate for a lumbar fusion at L4-5 and L5-S1.   *Id.*

Putney returned to Dr. Scott on January 14, 2019 for follow-up.   (Tr. 566.)   She underwent another MRI of the lumbar spine, which revealed a disc bulge with a superimposed central broad-based disc protrusion at L5-S1 causing mild ventral indentation on the thecal sac; no central canal stenosis; and mild facet joint arthropathy within the lower lumbar spine.   (Tr. 567.)   On April 4, 2019, Putney underwent a lumbar discogra.   (Tr. 573-74.)   The radiologist

---

[3]Norco contains a combination of narcotic (hydrocodone) and non-narcotic (acetaminophen) analgesics and is indicated for the relief of moderate to severe pain.   *See* WebMD, http://www.webmd.com/drugs (last visited September 8, 2022).

was able to reproduce Putney's low back pain upon injection of the L4-L5 discs.   (Tr. 574.)
Diffuse L4-L5 degenerative disc disease with loss of disc height was noted.   *Id.*   A post-
discography CT of the lumbar spine was performed, which revealed L4-L5 degenerative disc
disease with diffuse annulus generation, and contrast extending through a right paracentral
posterior annual fissure into a small right paracentral disc protrusion.   (Tr. 577-78.)   This
slightly indented the thecal sac.   (Tr. 577.)   The radiologist also noted L5-S1 intradiskal
contrast accumulation within the nucleus pulposus and inner third of the left ventral lateral
annulus, and contrast extension through a midline posterior annual fissure into a modest sized
central disc protrusion indenting the thecal sac.   *Id.*   Finally, mild bilateral L4-L5 and L5-S1
foraminal stenosis was noted.   *Id.*

On June 13, 2019, Putney underwent a lumbar fusion at L4-5 and L5-S1 performed by
Dr. Scott for her diagnosis of lumbar radiculopathy.   (Tr. 582.)

At a July 16, 2019 follow-up with physician assistant Sarah Oliver, Putney reported
lower back pain that she rated as a nine out of ten, which intermittently radiates to the left lower
extremity.   (Tr. 620.)   She had been taking Norco daily since her surgery.   *Id.*   Diffuse
tenderness to palpation of the lumbar spine was noted on examination.   (Tr. 621.)   On
September 3, 2019, Putney reported lower back pain that she rated as a six out of ten that radiates
to the left buttocks.   (Tr. 624.)   She was taking Norco and Tizanidine[4] prescribed by Advanced
Pain Center with moderate relief.   *Id.*   Diffuse tenderness to palpation of the lumbar spine was
noted along the midline.   (Tr. 625.)   Ms. Oliver, P.A., noted that Putney has experienced "some
improvement" in preoperative symptomatology and that the left lower extremity radiculopathy

---

[4]Tizanidine is indicated for the treatment of muscle spasms.   *See* WebMD,
http://www.webmd.com/drugs (last visited September 8, 2022).

has improved.  *Id.*  She was permitted to lift up to fifteen to twenty pounds.  *Id.*  On November 19, 2019, Putney rated her lower back pain as a five out of ten and indicated that it radiated intermittently to the left lower extremity with intermittent left lower extremity numbness and tingling.  (Tr. 626.)  She was still taking Norco and Tizanidine.  *Id.*  Ms. Oliver released Putney from Dr. Scott's care with no restrictions, with instructions to follow up with Advanced Pain Center for prescription pain control.  (Tr. 627.)

Putney saw Joseph Essmyer, M.D., at Advanced Pain Center on November 6, 2019, with complaints of lower back pain that radiates into the legs the left worse than right.  (Tr. 486.) On examination, Dr. Essmyer noted moderate to severe tenderness in the center of the lumbar spine and around the facet joints; minor muscle spasm; and positive straight leg raise and Faber's tests.  (Tr. 488.)  He also noted mild to moderate diffuse tenderness in all lower limb joints, especially the knee joints.  *Id.*  Putney was diagnosed with lumbar radiculopathy and chronic pain syndrome.  *Id.*  Dr. Essmyer continued Putney's narcotic medications.  (Tr. 489.)  Putney saw Charlotte Bess, FNP, at Advanced Pain Center on December 4, 2019.  (Tr. 492.)  Ms. Bess noted moderate to severe tenderness in the center of the lumbar spine and around the facet joints. (Tr. 494.)  She diagnosed Putney with post-laminectomy syndrome and continued her pain medications.  *Id.*  On December 31, 2019, Putney saw Dr. Essmyer for follow-up.  (Tr. 496.) Dr. Essmyer again noted moderate to severe tenderness in the center of the spine as well as around the facet joints.  (Tr. 498.)  He increased Putney's dosage of Norco and added Gabapentin.[5]  (Tr. 499.)  Putney continued to see practitioners at Advanced Pain Center for medication management in January through April of 2020.  (Tr. 686-700.)

---

[5]Gabapentin is indicated for the treatment of nerve pain.  *See* WebMD, http://www.webmd.com/drugs (last visited September 8, 2022).

On March 2, 2020, Putney presented to pain management physician Thomas D. Hansen, M.D., with complaints of persistent low back, buttock, and right thigh pain.  (Tr. 703.)   Dr. Hansen indicated that Putney had used hydrocodone, which has helped "very poorly."   *Id.*   On examination, Dr. Hansen noted that Putney's sensation was intact to light touch and she was able to stand on her heels and toes.   *Id.*   He assessed Putney with lumbar radiculitis without radiculopathy status post lumbar fusion, and recommended a dorsal column stimulator trial.   *Id.*   Dr. Hansen surgically placed the trial stimulator on June 9, 2020.   (Tr. 710.)   On June 16, 2020, Putney reported that she achieved sixty percent pain relief with the trial stimulator.   (Tr. 715.)   Dr. Hansen removed the trial stimulator and referred Putney back to Dr. Scott for placement of a permanent stimulator.   *Id.*

Putney presented to Ms. Oliver for a neurosurgery consultation on July 8, 2020.   (Tr. 734.)   She reported back and left leg pain, which she rated as a seven out of ten; and left lower extremity weakness.   *Id.*   Putney indicated that the pain is constant and is made worse by activity, sitting, and standing.   *Id.*   On examination, Ms. Oliver noted decreased range of motion of the lumbar spine; tenderness diffusely throughout the lumbar spine; and a sensory deficit in the left lower extremity.   (Tr. 736-37.)   She diagnosed Putney with post laminectomy syndrome.   (Tr. 737.)   Ms. Oliver indicated that Dr. Scott would place a spinal cord stimulator. (Tr. 737-38.)

The ALJ acknowledged that the record "certainly reflects a history of relevant treatment, including a lumbar fusion in June 2019."   (Tr. 16.)   He stated that the objective medical evidence, however, was "only somewhat consistent with her allegations."   *Id.*   As noted above, the ALJ cited the lack of chronic motor, sensory, strength, or reflex deficits as inconsistent with Putney's subjective allegations of pain and limitations.   (Tr. 17.)

The ALJ erred in relying on some normal examination findings to discredit Putney's subjective allegations when the medical evidence as a whole contains ample support for Putney's allegations of pain.   As Putney points out, she began receiving treatment for back pain in approximately 2016, and her treatment has consisted of injections, narcotic pain medication, lumbar surgery, physical therapy, and a spinal cord stimulator.   Putney's lumbar MRI revealed advanced lumbar disc degeneration causing neural foraminal stenosis, which made Putney a candidate for surgery.   (Tr. 604.)   The evidence reveals that Putney continued to complain of uncontrolled pain following her surgery, despite taking narcotic medications.   Examiners frequently noted moderate to severe tenderness in the center of the lumbar spine and facet joints and positive Faber's test.   Ms. Oliver noted a sensory deficit in the left lower extremity in July 2020, along with decreased range of motion and tenderness throughout the lumbar spine.   (Tr. 736-37.)

Moreover, the ALJ did not discuss any of the other *Polaski* factors after finding the medical evidence was not supportive of Putney's subjective allegations.   Putney relies upon this Court's decision in *Eddingfield v. Saul*, 4:18 CV 1590 ACL, 2019 WL 4536968, at *8 (E.D. Mo. Sept. 19, 2019), in arguing that the ALJ's credibility determination is not supported by substantial evidence.

In *Eddingfield*, like the instant case, the ALJ discredited the claimant's subjective allegations based on their alleged inconsistency with the objective medical evidence.   The undersigned found that the ALJ failed to explain how the medical evidence was inconsistent with the claimant's subjective complaints.   *Id.*   The ALJ did not discuss any of the other *Polaski* factors, nor did she point to any inconsistencies in the record.   *Id.*   The Court therefore found that the ALJ erred "by failing to specifically and accurately detail the inconsistencies in

Eddingfield's testimony and the record that caused the ALJ to reject Eddingfield's subjective complaints." *Id.* Because of this error, the Court found there was "not substantial evidence and good reasons to support the ALJs credibility determinations and remand is required." *Id.*

Similarly, in the instant case, the ALJ's credibility determination lacks the support of substantial evidence. The ALJ relied solely on the lack of objective medical evidence to support Putney's subjective allegations, yet failed to explain how the "lack of chronic motor, sensory, strength, or reflex deficits" were inconsistent with Putney's allegations in light of the ample evidence and findings that support Putney's allegations. Putney's pain allegations are consistent with her regular treatment for back pain, consisting of conservative treatment followed by surgery, narcotic medication, and an implanted spinal cord stimulator. Additionally, Putney's testimony regarding minimal daily activities and her strong work history bolster her allegations. An ALJ may not "pick and choose only evidence in the record buttressing [his] conclusion" while ignoring contrary evidence. *See Taylor v. o/b/o McKinnies v. Barnhart*, 333 F.Supp.2d 846, 856 (E.D. Mo. 2004). Although an analysis of the claimant's subjective statements is for the ALJ to make, the ALJ must still support his conclusions with substantial evidence. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

After evaluating Putney's subjective allegations, the ALJ concluded that Putney had the RFC to perform a range of light work. (Tr. 18.) Because the ALJ's RFC determination was based on the faulty analysis of Putney's subjective complaints, the RFC determination also lacks the support of substantial evidence.

Further, the only medical opinion in this case was rendered by the state agency medical consultant on August 1, 2018. (Tr. 63-66.) As acknowledged by the ALJ, this opinion was provided prior to Putney's fusion surgery and the implantation of the stimulator and therefore

was only partially consistent with the evidence of record.   (Tr. 18.)   The ALJ also accurately pointed out that the limitations found by Ms. Oliver following Putney's surgery were only temporary and were not an accurate reflection of her permanent functioning.   *Id.*   "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."   *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)).   Although the ALJ was not required to choose a particular medical opinion on which to rely in determining Putney's RFC, he cited no medical evidence whatsoever in support of his determination.   Upon remand, the ALJ should obtain additional medical evidence, if necessary, regarding Putney's ability to function in the workplace.

## IV.   Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order.   Upon remand, the ALJ must properly consider Putney's subjective complaints, obtain additional evidence if necessary, and formulate an RFC supported by substantial evidence.

/**s**/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of September, 2022.